**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| HARRY A. BOLDEN | * | |
| | * | |
| Plaintiff, | * | Civil Action No.: 1:21-cv-02295-JRR |
| vs. | * | |
| | * | |
| CAEI, INC., et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RESPONSE IN
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Harry A Bolden ("Plaintiff"), by undersigned counsel, and pursuant to Local Rule 105, hereby submits this Memorandum of Law in Support of Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, and states as follows:

## I.    INTRODUCTION

Mr. Bolden began working with Defendants in September 2014 as a billing specialist.  Mr. Bolden was recruited through a complex multiparty contract where Defendants contracted Mr. Bolden as a "Temporary Worker" to work for the Defendants. He was recruited, interviewed, hired, hired, and ultimately fired by Defendant BGE and CAEI. Mr. Bolden performed his duties and responsibilities more than satisfactory and received many performance awards and commendations from Defendants' customers. In May 2015, Mr. Bolden got a new supervisor, Ms. Watts, who soon after began to take harassing and discriminatory actions against Mr. Bolden motivated by his race and gender as an African American male, respectively. After a prolong period of coping with Ms. Watts actions, on February 4, 2016, Mr. Bolden initiated a complained to her superiors and on February 12, 2016, Defendants fired Mr. Bolden.

## II.     DISPUTED & UNDISPUTED STATEMENT OF FACTS

### A.  Mr. Bolden's Employment By Defendant

On or about September 12, 2014, Defendants employed Mr. Bolden as a billing specialist. (Plaintiff's Deposition, hereinafter, "Ex. 1, PI's Dep". 81:1-4,101:13-20.

Mr. Bolden was initially interviewed by Ms. Kia smooth, an agent or representative of CAEI. *Id.* 82:5-6.  His application and related recruitment documentation was handled by CAEI at their office in Columbia Maryland. *Id.* 83:10-16.  Mr. Bolden was also interviewed by at least three individuals from BGE. *Id.* 83:1-6,84:1-4, 85:16-19.  Mr. Bolden physically appeared in person for this interview.  Mr. Bolden was employed to work at the BGE Call Center. *Id.* 88:15-17. BGE also conducted orientation for Mr. Bolden and the other CAEI billing specialist who started with Mr. Bolden. *Id.* 89:9-14.

Although directly employed as a temporary worker by CAEI Mr. Bolden was given the impression that BGE was the main employer. *Id.* 113:10-16. The agreement under which Defendants employed Mr. Bolden defines CAEI as Mr. Bolden's employer, who is contracted to Pontoon solutions, Inc a Florida corporation, defined as the vendor for CAEI. *Id.*  111:7-14. The vendor provides the services performed by Mr. Bolden and others, as "temporary workers" to the vendors' customers, in this case, BGE. *Id.* 111:7-14. Plaintiff temporary worker agreement required Mr. Bolden to perform services to the satisfaction of Exelon. *Id.* 113:15,114:1-8.

Mr. Bolden was not aware that BGE and CAEI were separate companies. *Id.* 115:1-4,116:12-15. Mr. Bolden was one of a cohorts of about twenty-three (23) billing specialist, supervised by CAEI team leads and BGE supervisors including Brian Andrews and Ms. Webster. *Id.* 115:16-22. BGE representatives did quality checks. *Id.* 119:14-16.  Mr. Bolden was assigned an e-mail address from BGE that he used throughout his employment for all employment activities

and correspondences. *Id.* 156:10-11. Mr. Bolden also performed his duties and responsibilities under the direct and indirect supervision of CAEI team leads, first by Debra Crew then by Tabitha Horn, and finally by Angelique Watts. *Id.* 95:1-4.

Mr. Bolden performed his job duties satisfactorily as a billing specialist and was given several performance award and commendations by Defendants.  Mr. Bolden received awards for attendance. *Id.* 94:18-19. Mr. Bolden received other performance awards from CAEI team leads and BGE's Brian Andrews. *Id.* 125:3-9. This included the performance related "WOW" award from BGE and several performance awards from CAEI. Mr. Bolden also received many commendations from Defendants' customers. *Id.*  158:1-7, 159:1-3.

### B.  Mr. Bolden Was Target by Angelique Watts

In May 2015, Angelique Watts ("Ms. Watts"), became Plaintiff's direct supervisor. Ms. Watts was directly employed by CAEI. *Id.* 132:10-12. At the time, Mr. Bolden was the go-to person for training new employees and had trained all the new employees or retrained current employees before Ms. Watts became his supervisor. Mr. Bolden was performing this duty at the behest of Ms. Webster, the BGE manager, who Ms. Watts eventually replaced. *Id.* 134:2-7.

After becoming Mr. Bolden's supervisor, Ms. Watts began treating Mr. Bolden less favorable than his co-workers and in a discriminatory and harassing manner.  Ms. Watts regularly forced Mr. Bolder to prepare and serve meals to his co-workers, while female billing specialist like Jessica Robinson and Ms. Whitney were not required to do so. Instead, Ms. Watts often forced Mr. Bolden to pick up lunches for his female co-workers, including Ms. Whitney. *Id.*  159:16-19,163:1-2;11-20. Ms. Watts remark to Ms. Whitney that "you don't have to pick up your food as long as there's a man around. *Id.* 162:1-17,163:1-2. After these occurrences Ms. Watts would then bring Mr. Bolden into her office for disciplinary action for been off the phones and alledgly stealing company time during those periods when he was directed by Ms. Watts to prepare, serve, or pick

up employees' food. *Id.* 129:3-8. *Id.* 166:19-22.

Ms. Watts moved around Mr. Bolden's desk or workstation and located him in an area with uncontrol cold temperatures from a broken air conditioner. All the billing specialists were in the same areas in cubicles. *Id.* 121:9-11. Initially they were offered the choice to switch cubicles or where they wanted to sit. *Id.* 121:17-19. When Ms. Watts came on he she had everyone change cubicles again. *Id.* 123:1-5. Later she only demanded Mr. Bolden to move his work location and no one else. *Id.* 124:1-5. She moved him to an area where the air conditioning unit was not functioning and constantly blowing cold air on Mr. Bolden making it uncomfortable and difficult for him to work. *Id.* 124:10-14. To cope with the cold temperature in the area, Mr. Bolden wore a coat and hat inside. However, Ms. Watts compelled him to take his hat off under threat of sending Mr. Bolden home. *Id.* 189:2-9.

On one occasion, Ms. Watts told Mr. Bolden that she didn't want him to train a male employee because "one man shouldn't be training another man." *Id.* 168:1-4. On other occasion Ms. Watts told Mr. Bolden that he only wanted to train "pretty girls" and that he should not worry about it because she had him "covered". *Id.* 171:13-16, 172:2-12.

One day after Mr. Bolden complained to Ms. Smoot on February 4, 2016, Ms. Watts demanded that Mr. Bolden prepare and bring in homemade chili to work for the entire collection specialist team. *Id.* 176:5-8. After Mr. Bolden declined, Ms. Watts invited female collection specialist Robin and Nicole to pressure, Mr. Bolden, to bring in the homemade chili. *Id.* 177:13-21.

On one occasion, Ms. Watts, in the presence of Nicole and Robin, told Mr. Bolden that he should be more like Marvin Gurthrie and Marcus Walker, because they have "all the women after them". *Id.* 178:4-8.

Ms. Watts also began to take away Mr. Bolden's employment benefits. In one instance. Mr. Bolden was appointed to the Safety Committee for BGE. *Id.* 178:15-17. However, he was then

removed by Miss Watts. *Id.* 181:3-7. A few days before he was terminated. *Id.* Each billing specialist receives "auto-in" time, which is an hour to an hour and a half each day when they are not dialed in to their computer and instead logged out on "auto-in" time waiting for incoming calls. Ms. Watts took away this benefit from Mr. Bolden. *Id.* 183:21-22, 184:1-5. Furthermore, she harassed Mr. Bolden with constantly requesting Mr. Bolden to switch between dialing into the computer and logging out on "auto-in time. *Id.* 185:12-19. However, Ms. Watts allow billing specialist Robin to use an iPod to watch movies and play games during auto-in time. *Id.* 187:15-17.

Ms. Watts constantly kept telling Mr. Bolden to "thug it up", and often implied that Mr. Bolden was not acting "black enough" or sounded "black enough" on the phone with Defendants' customers and should try to change that to be more effective at his job. *Id.* 255:3-10.

### C. Mr. Bolden's Firing By Defendants

On February 4th. Mr. Bolden complained to Ms. Smoot about Ms. Watts' harassment and requested to change his workstation. Mr. Smoot said she could not do anything about it and would have Mr. Andrews get back to Mr. Bolden on February 7, 2016. *Id.* 150:3-7. *Id.* 149:19-22. *Id.*.201:10-12.

On February 5th. Mr. Bolden had a meeting with Mr. Hubbard and Ms. Watts where Ms. Watts alleged that Mr. Bolden had harassed Ms. Watts. *Id.* 209:17-19. Mr. Bolden denied the allegations and Ms. Watts began screaming that Mr. Bolden was a liar. *Id*. 210:2-9. She alleged that Mr. Bolden refused to train a male employee and toss his headset at Ms. Watts. *Id.* 210:6-9. She also stated that Mr. Bolden had refused another order she gave him to move his workstation. *Id.* 210:10-12. She reported this to Ms. Webster, and slur Mr. Bolden as a person with potential for violence and threaten to have the police come to help moving Mr. Bolden's seat. *Id.* 209-211

On February 7, 2016, Mr. Bolden complained to Mr. Andrews about Ms. Watts' harassment and what may have transpired in the February 5, 2016, meeting. *Id.* 202:1-22.

On February 11, 2016, Mr. Bolden had a meeting with Ms. Hubbard and Ms. Smoot. Per usual, Mr. Bolden appeared with doughnuts and orange juice thinking it was a regular meeting. After waiting for over an hour, Mr. Hubbard and Ms. Smoot came in and shortly began accusing Mr. Bolden of calling someone at BGE and reporting that Mr. Bolden was been accused of harassing Ms. Watts. *Id.* 66:7-12. *Id.* 217:20-22,218:6-10.

On February 12, 2016, Mr. Hubbard called and told Mr. Bolden that Mr. Bolden would be fired from his position as a billing specialist. He again accused Mr. Bolden of falsely reporting to BGE that Mr. Bolden was accused of harassing Ms. Watts and said Mr. Bolden had no integrity. *Id.* 219:17-22, 220:1-7. *Id.* 146:2-6. Subsequently Defendants allege that three unknown and unnamed female billing specialist allege that the heard Mr. Bolden made remarks about assaulting them as the reason for firing Mr. Bolden. *Id.* 196:9-14. Yet, during his employment Mr. Bolden witness African American female billing specialist in physical altercation with each other, with one hitting the other and they were not fired, *Id.* 155:16-22,156:1-7.

### III.    STANDARD OF REVIEW

"If the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," then summary judgment may be rendered. Fed R. Civ. P. 56(c). In other words, summary judgment is only to be granted when no genuine and disputed issues of material fact remain, and the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). However, "[if] the moving party has met its responsibility of identifying the basis for its motion, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" White v. Rockingham Radiologists, Ltd., 820 F.2d 98, 101 (4th Cir. 1987) (quoting Celotex Corp. v.

Catrett, 477 U.S. 317, 324 (1986); Fed. R. Civ. P. 56(e)).

A genuine issue of material fact may exist if the evidence presented to the court is sufficient to indicate the existence of a factual dispute that could be resolved in favor of the non-moving party at trial. Rachael-Smith v. FTDATA, Inc., 247 F. Supp. 2d 734, 742 (citing Anderson v. Liberty Lobby, Inc.,477 U.S. 242 (1986)) Only "facts that might affect the outcome of the suit under the governing law" are material. Anderson, 477 U.S. at 248. Moreover, a dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

In considering a motion for summary judgment, the court does not weigh evidence of a genuine issue of material fact that a party adduces against the movant's evidence but submits it to the trier of fact for resolution. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). In that context, a court must consider the facts and evidence of the non-moving party as true. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In addition, all reasonable inferences drawn from disputed evidence are to be resolved in the light most favorable to the nonmoving party. Pulliam Investment Co., Inc. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987). The party seeking summary judgment bears the responsibility of demonstrating the "absence of a genuine issue of material fact." Celotex Corp. v. Catrett, All U.S. 317, 323 (1986)."

## IV.   ARGUMENT

### A.  BGE is not Entitled To Summary Judgment Because Plaintiff Exhausted Administrative Remedies Against BGE

Ordinarily, a plaintiff's failure to name a party within an EEOC charge would prohibit suit against the party for failure to exhaust administrative remedies. *See Alvarado v. Bd. Of Trs. Of Montgomery Cmty. Coll.,* 848 F.2d 457, 458-59 (4th Cir. 1988) (explaining that the naming requirement "notifies the charged party of the asserted violation [and] brings the charged party

7

before the EEOC and permits effectuation of [Title VII]'s primary goal, the securing of voluntary compliance with the law"). Some courts, however, recognize the "substantial identity" exception to the naming rule, whereby a plaintiff may bring suit against a defendant unnamed in an EEOC charge. *See, e.g., Sedlacek v. Hach,* 752 F.2d 333, 334-36 (8th Cir. 1985); *Romero v. Union Pac. R.R.,* 615 F.2d 1303, 1311 (10th Cir. 1980). Although the Fourth Circuit has neither explicitly adopted nor rejected the "substantial identity" exception, it has cited the exception with approval in dicta. *See Alvarado,* 848 F.2d at 461 (4th Cir. 1988) (finding it unnecessary to apply the exception in the case *sub judice,* but citing district court decisions within the Fourth Circuit that have applied it); *E.E.O.C. v. Am. Nat'l Bank,* 652 F.2d 1176, 1186 n. 5 (4th Cir. 1981) (reasoning that jurisdiction is proper "where it is clear that the defendant through some relationship with the named respondent had notice of the charges and participated in the conciliation process."). *Lipscomb v. Technologies, Services, Information, Inc.,* Civil Action No. DKC 09-3344, at 13-15 (D. Md. Feb. 18, 2011)

a. **Exception to Title VII Name Requirement Should Be Applied in This Case**

In the instant case, this Court should follow Lipscomb and apply the substantial Identity Exception to the naming requirement in the EEOC Charge, as in *E.E.O.C. v. Am. Nat'l Bank,* 652 F.2d 1176, 1186 n. 5 (4th Cir. 1981) (reasoning that jurisdiction is proper "where it is clear that the defendant through some relationship with the named respondent had notice of the charges and participated in the conciliation process."). Here the facts show that through its relationship with CAEI, Defendant BGE had actual and constructive notice of the charge of discrimination filed by Mr. Bolden with Maryland Commission on Civil Rights ("MCCR").

b. **BGE & CAEI Relationship satisfies the Substantial Identity Exception**

To determine whether a substantial identity exists between two entities, the court should consider: "(1) similarity of interests between named and unnamed parties; (2) ability of the plaintiff to ascertain the unnamed party at the time of the EEOC charge; (3) notice of the EEOC charge by

the unnamed party; and (4) prejudice."*Zhang,* 332 F.Supp.2d at 867 (citing *Thomas v. Bet Sound-Stage Rest./Brett Co, Inc.,* 61 F.Supp.2d 448, 457-58 (D.Md. 1999)). *Lipscomb v. Technologies, Services, Information, Inc.*, Civil Action No. DKC 09-3344, at 13-15 (D. Md. Feb. 18, 2011) Also, this Court has previously followed the principle in *McAdoo*, 591 F.Supp. at 1403-04 (holding that Title VII administrative procedures are "'not intended to serve as a stumbling block to the accomplishment of the statutory objective," and that demanding procedural perfection where the plaintiff filed his administrative charge without the benefit of counsel places a burden "'Congress neither anticipated not intended'"). *Bolden v. CAEI, Inc.*, CIVIL JRR-21-02295, at *1 (D. Md. May 9, 2022).

### i.   Plaintiff Did Not Know BGE's role when He Filed His MCCR Charge

The facts shows that Mr. Bolden thought he was working for both BGE and CAEI, as one and the same company. Ex. 1, PI's Dep. 115:1-4,116:12-15. Mr. Bolden did not understand the convoluted agreement between Defendants as vendors, customers and employer. *Id.* 111:2-22, 112:1-9.

### ii.   There is Similarity of Interest Between BGE & CAEI's

This court previously ruled in this case that: "Following investigation of Plaintiff's administrative charge, the Maryland Commission on Civil Rights issued Written Findings (Exhibit F to the Motion, ECF 11) which include reference to an interview with Ms. Kadijah Webster, a manager with Exelon bearing supervisory authority over Plaintiff (and referred to in Exhibit C to the Motion as "Manager from BGE-Exelon"). *Bolden v. CAEI, Inc.*, CIVIL JRR-21-02295, at *2 (D. Md. May 9, 2022). Evidence produced in records of the cases shows that allegations in the pleadings are substantiated denying Defendant's summary judgment as a matter of law.

### iii.   BGE was not prejudice by not Participating in the Administrative proceeding.

Defendants were not prejudice because the case was not resolved in the administrative proceeding. "The EEOC filing did not result in an adverse finding against either the County or the Sheriff; it is wholly implausible that, had the County been named in the EEOC filing, it would have altered its course as to Mr. Gamble in the EEOC proceedings because the commission found that Mr. Gamble had not made out a statutory violation. *Gamble v. Charles Cnty.*, 20-cv-3126-PWG, at *21 (D. Md. Aug. 9, 2021) Likewise in this case, BGE clearly demonstrate that naming BGE in the MCCR Charge of discrimination would not have altered its courts as to Mr. Bolden. Indeed, BGE adopts the EEOC positions statement allegations of Defendant CAEI as the core of its factual defences against Mr. Bolden.

### iv.   BGE Led Mr. Bolden to Believe that his relationship with BGE was through CAEI.

By its direct and indirect actions, BGE led Mr. Bolden to believe that he had a relationship with BGE through CAEI.  To begin with, Mr. Bolden was interviewed by three BGE representative during the hiring process. Subsequently, Mr. Bolden was subjected to orientation by BGE representative, and given an official BGE domain email account. During the period of employment BGE representatives were involved in the supervision, and performance evaluation of Plaintiff's work. Ex. 1, PI's Dep. 95:1-4. BGE also issued performance awards to Plaintiff and responsible for promotion and pay increases to CAEI direct employees. *Id.* 127:1-7.

### B.  BGE is Not Entitled to Summary Judgment Because BGE was a Joint Employer of Mr. Bolden

Title VII of the Civil Rights Act of 1964 makes it unlawful for "employers" to discriminate against any individual on the basis of race, colour, religion, sex or national origin. 42 U.S.C. § 2000e-2(a)(1). At least until very recently, it was clear that the Fourth Circuit took the position that, under certain conditions, supervisory personnel could be included in the definition of

"employers" for purposes of Title VII liability. In the leading decision on this issue, _Paroline v. Unisys Corp.,_ 879 F.2d 100 (4th Cir. 1989), the Fourth Circuit clarified,

> An individual qualifies as an "employer" under Title VII if he or she serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment. The supervisory employee need not have the ultimate authority to hire or fire to qualify as an employer, as long as he or she has significant input into such personnel decisions. Furthermore, an employee may exercise supervisory authority over the plaintiff for Title VII purposes even though the company has formally designated another individual as the plaintiff's supervisor. As long as the company's management approves or acquiesces in the employee's exercise of supervisory control over the plaintiff, that employee will hold "employer" status for Title VII purposes. 879 F.2d at 104 (citations omitted).

_Crosten v. Kamauf_, 932 F. Supp. 676, 680 (D. Md. 1996)

In the present case, BGE agents, employees and representatives served in a supervisory position over Mr. Bolden, exercised significant control over his hiring, firing, and conditions of employment, or significant input in those personnel decisions. Mr. Hubbard told Mr. Bolden that BGE did not want Mr. Bolden on the project. Ex. 1, PI's Dep. 219:17-22, 220:1-7. Furthermore, Mr. Bolden was interviewed by three BGE employees. _Id._ 83:1-6,84:1-4, 85:16-19. Also, BGE supervisor were significantly involved in the supervision and evaluation of Mr. Bolden's work. _Id._ 125:3-9.

### C. BGE is not Entitled to Summary Judgment Because BGE & CAEI Engage in Unlawful Discrimination, Harassment & Retaliation Against Plaintiff.

#### a. The Facts supports a claim of harassment based on Race & Gender

At least, starting from May 2015 though to his firing on February 12, 2016, Plaintiff suffer harassment from his supervisor Ms. Watts that was motivated because of Plaintiff's racial background as an African American and his sex or gender as male.

#### b. The Facts support Plaintiff's claim that BGE & CAEI discriminated against

1

**Plaintiff based on Race and Gender**.

Title VII prohibits employment discrimination based on race, color, religion, sex, and national origin. *See* 42 U.S.C. § 2000e. There are two methods for proving intentional discrimination in employment under Title VII: (1) through direct or indirect evidence of intentional discrimination, or (2) through circumstantial evidence under the three-step, burden shifting scheme set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). For the first method, an employee may utilize "ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue." *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 606-07 (4th Cir. 1999) (quoting *Tuck v. Henkel Corp.*, 973 F.2d 371, 374 (4th Cir. 1992)). To overcome a summary judgment motion based upon this method of proof, a plaintiff "must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact." *Id.* at 607 (quoting *Goldberg v. B. Green & Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988) (brackets existing)). And so, a plaintiff must provide "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (citation omitted *O'Reilly v. Del Toro*, Civil Action 20-cv-00490-LKG, at *6 (D. Md. Aug. 25, 2022)

   i. **The facts support a prima facie case of race and gender discrimination against Defendants.**

The facts shows that Ms. Watts made it quite clear that her harassing actions towards Mr. Bolden was motivated by the facts that Mr. Bolden was African American and a was a male. Ex. 1, PI's Dep. 255:7-22.

### 1. Plaintiff's performance was satisfactory.

Defendants have not denied that Mr. Bolden received various performance award from Defendants. Mr. Bolden received attendance awards, *Id.* 158:1-7, 159:1-3. He received the "WOW" award from BGE, and many performance awards from CAEI. *Id.* He was also selected for the BGE safety committee. *Id.* 178:15-17. He was the primary person that trained new employees and retrained co-workers. *Id.* 132:16-21. Before the February 5, 2016, meeting where Ms. Watts accused Mr. Bolden of refusing to train an employee and tossing his headphone at her, Mr. Bolden had no performance of conduct issues at work. These allegations came against Mr. Bolden after he complaint about Ms. Watt's harassing actions on February 4, 2016.

### 2. Plaintiff was fired under circumstances that gives rise to an inference of race and gender discrimination.

To begin with Mr. Bolden was fired after he complained about Ms. Watts harassing and discriminatory actions against him. *Id.* 219:17-22, 220:1-7. This would necessarily include asking him tasked and duties outside his job requirements such as preparing and serving food to co-workers. *Id.* 159:16-19,160:1-6. Demanding that Mr. Bolden pickup lunch for the female employee and making remarks that as long as a man is around the female employees did not need to pick up their lunch that they ordered out. *Id.* 162:9-14, 163:1-2. Demanding that Mr. Bolden make homemade chilli and bring in for the female employees and having the female employees gang up on Mr. Bolden when he refused. *Id.* 176:5-8. Directing Mr. Bolden to "thug it up", and making remarks that he is not acting "black enough". *Id.* 255:3-10. Making implicit racial stereotyping of Mr. Bolden as having a "tendency for violence" when he had never shown violence to anyone at work, and instead, was the most compliant to the directives and instructions from his supervisor Ms. Watts. Directing Mr. Bolden to emulate other male employees because they have the ladies going after them, *Id.* 178:4-8. These actions are "evidence of conduct or statements that both

reflect directly the alleged discriminatory attitude and that bear directly on the contested

employment decision" by Defendants to fire Mr. Bolden.

### ii.   Female collections specialist was treated More favourably than Mr. Bolden

The female billing specialists, including were not required to prepare and serve food at any

of the social events. *Id.* 159:16-19,160:1-6. Ms. Watts did not deprive or deny them their auto-in

time or used it to harass any of them. *Id.* 184:13-22. Instead, Ms. Watts allowed one of them to use

her iPod and watch movies and play games. *Id.* 187:15-17. Mr. Bolden witness a physical fight

between two female employees and Defendants did not fire either of them. *Id.* 122:1-3.  Female

billing specialist were given the benefit of having their foods picked up by Mr. Bolden. *Id.* 162:9-

14, 163:1-2.

### iii.   Defendant's non-discriminatory reason for firing Plaintiff was a pretext for race and gender discrimination.

Once the defendant has articulated a non-discriminatory reason for the employment action,

the plaintiff must then "prove by a preponderance of the evidence that the legitimate reasons offered

by the defendant were not its true reasons but were a pretext for discrimination." Burdine, 450 U.S.

at 253. To show pretext, a plaintiff must proffer sufficient evidence such that a reasonable trier of

fact could conclude that the employer's explanation is false or "'unworthy of credence,'" Mereish

v. Walker, 359 F.3d 330, 336 (4th Cir. 2004) (quoting Burdine, 450 U.S. at 256), and that

discrimination or retaliation was the true reason for the adverse employment action. Hicks, 509 U.S.

at 515. Additionally, "In order to show pretext, a plaintiff may show that an employer's proffered

non-discriminatory reasons for the termination are inconsistent over time, false, or based on mistakes

of fact. *E.E.O.C. v. Sears, Roebuck & Co.*, 243 F.3d 846, 852–53 (4th Cir. 2001)."

In this case, to start with, Defendants proffered non-discriminatory reason for firing Mr.

Bolden are inconsistent overtime and changing from time to time. On one occasion, Defendants

alleged that Plaintiff fired because he refused to train an employee and tossed his headset at Ms. Webb. *Id.* 210:6-9.  Then Defendants said it was due to Plaintiff's lack of integrity because he allegedly falsely reported to BGE that he was been accused of harassing Ms. Webb. *Id.* 219:17-22, 220:1-7. Finally, Defendants settled on allegations that Plaintiff talked about assaulting three unnamed and unknown female co-worker and put them in the trunk of his car. *Id.* 195:13-16.

Furthermore, the explanations are not worthy of credence. Mr. Bolden was the type of employee who brought in donuts and drinks for meetings, gift cards, for holidays, birthdays, for his co-workers. *Id.* 135:16-20. He received various performance awards from both BGE and CAEI and commendations for their customers. *Id.* 158:1-7, 159:1-3. He obediently picked up food for the ladies and served food to his co-workers and then suffers disciplined for been away from his phone without recourse to confrontation. *Id.* 166:1-10. He was selected for the safety committee. *Id.* 178:15-17.  The firing of Mr. Bolden also materially linked in time to Mr. Bolden's reporting that he was been harassed by Ms. Webb.  *Id.* 219:17-22, 220:1-7.

   **c.   The facts support Plaintiff's Claim for hostile work environment.**

Beginning with the required elements of a hostile work environment claim, the plaintiff must demonstrate: (1) she experienced unwelcome harassment; (2) the harassment was based on her gender or race; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). *Evans v. Int'l Paper Co.*, 936 F.3d 183, 192 (4th Cir. 2019) "The severe or pervasive element has both a subjective and objective component. *E.E.O.C. v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009). Evans must show that she "did perceive, and a reasonable person would perceive, the environment to be abusive or hostile." *Id.*"

"[W]hen determining whether the harassing conduct was objectively 'severe or pervasive,' we must look 'at all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). "[P]laintiffs must clear a high bar in order to satisfy the [objective] severe or pervasive test." *Id.* "[I]ncidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard." *Id.* Thus, rude treatment from coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisor are not actionable under Title VII. *Id.* at 315–16. *Evans v. Int'l Paper Co.*, 936 F.3d 183, 192 (4th Cir. 2019)

           i. **The facts shows that the actions against Plaintiff were based on his sex and gender as a male employee and his Racial Background as An African American.**

Ms. Watts refused to assign Mr. Bolden to train or retrain a male employee, saying "a man should not be training a man". *Id.* 168:1-4. Mr. Watts accused Mr. Bolden of "only want to train pretty girls." *Id.* 171:13-16, 172:2-12. Ms. Watts directed Mr. Bolden to more like other co-workers who have lots of women going after them. *Id.* 178:4-8. Ms. Watts compelled Mr. Bolden to pick up food ordered by female employees and telling the female employees that as long has Mr. Bolden is present, they don't have to pick up their lunches and he will have to do it for them because Mr. Bolden is a man. *Id.* 162:1-17,163:1-2.

More than twenty times Ms. Watts would make remarks to Mr. Bolden telling him to "thug it up" and that he is not acting "black enough" in dealing with Defendants customers. *Id.* 255:3-10. Furthermore, stereotyping Mr. Bolden as a person prone to violence without any reasonable support demonstrates implicit bias against African American males.

16

### ii.  The conduct was severe and pervasive.

Ms. Watts harassing conduct toward Mr. Bolden was subjectively severe and pervasive. The act of compelling Mr. Bolden to prepare and served food to his co-workers at most, if not all the social gathering at work, after Ms. Watts became his supervisor, is demeaning of itself. *Id.* 161:1-22. Any reasonable person, including Mr. Bolden would find such a demand by their job offensive and embarrassing, especially since such task is not required by their job position and duties. The act of compelling Mr. Bolden to pick up food for female employees is severed. Moreso, in the context where Ms. Watts stopped the said employee from getting her ordered lunch and directed Mr. Bolden to leave work and go pick up the said lunch for the female employee because he is a man. *Id.* 159:16-19,163:1-2;11-20. Ms. Webb's act of denying Mr. Bolden to role to train a co-worker telling Mr. Bolden that "a man should not be training a man" is severe in the workplace. Also, her remarks to Mr. Bolden that he only wanted to train "pretty girls" and her had him "covered" was severe considering her persistent badgering of Mr. Bolden about his gender and sex as a male person. *Id.* 171:13-16, 172:2-12. *Id.* 168:1-4.  Ms. Watts remarks and comments to Mr. Bolden to "thug it up" or he is not acting "black enough" over twenty times, during the eight months when she was his supervisor between May 2015 and February 2016 was severe in the workplace. *Id.* 255:3-10.

The frequency of Ms. Watts' actions clearly shows a pattern of persistency and escalation with the actions of Ms. Watts during the eight months when she was Mr. Bolden's supervisor. These actions by Defendants were not "incidents of rude treatment from coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisor."  These are illegal discriminatory actions in the workplace.

### d.  The facts support Plaintiff's Claim for Retaliation

The facts show that Mr. Bolden engaged in protected activities, and soon thereafter. Defendants took adverse actions against him. To establish a prima facie case of retaliation under Title VII and Section 1981, the plaintiff must show: (1) she engaged in a protected activity; (2) the employer acted adversely against her; and (3) there was a causal connection between the protected activity and the adverse employment action. _Guessous v. Fairview Prop. Investments_, LLC, 828 F.3d 208, 216–17 (4th Cir. 2016). "An employee may satisfy the first element by showing that she opposed a practice that Title VII prohibits." Jenkins v. Gaylord Entm't Co., 840 F. Supp. 2d 873, 880 (D. Md. 2012). "For such activity to constitute opposition, the plaintiff must have a reasonable and good faith belief that the conduct [] she opposes constitutes unlawful discrimination under Title VII." Id. at 881 (citing _Clark Cty. Sch. Dist. v. Breeden_, 532 U.S. 268, 271 (2001)). "Opposition almost always arises when an employee communicates to her employer her reasonable belief that the employer has engaged in discrimination." Id. (citing _Crawford v. Metro. Gov't of Nash. and Davidson Cty., Tenn._, 555 U.S. 271, 276 (2009)). "[T]the Fourth Circuit has held that the filing of an EEOC complaint generally constitutes protected activity." _Kearns v. Northrop Grumman Sys. Corp._, Civil No. ELH-11-1736, 2014 WL 2170781, at *10 (D. Md. May 23, 2014). As to the second element, "[a] plaintiff can demonstrate that an employer 'acted adversely' by showing that 'a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" _Lewis v. Baltimore City Bd. of Sch. Commissioners_, 187 F. Supp. 3d 588, 595 (D. Md. 2016) (quoting _Burlington N. & Santa Fe Ry. Co. v. White_, 548 U.S. 53, 68 (2006)). An adverse action in a retaliation claim must be "materially adverse." _Burlington N._, 548 U.S. at 68.

### i. There are sufficient facts to establish the prima facie claim for retaliation.

In this case, the facts shows that Plaintiff engaged in opposition activity against the harassing actions of Ms. Watts.  The facts demonstrate that Mr. Bolden clearly had a reasonable and good faith belief that Watts' actions constitute unlawful harassment and discrimination.

### 1. The facts shows that Plaintiff engaged in protected activities.

On February 4, 2016, Mr. Bolden reported Ms. Watts foregoing harassing actions to Smooth. *Id.* 150:3-11. Ms. Smoot said she would have Mr. Bolden speak with Mr. Andrews on February 7, 2016. Id. On February 5, 2016, Mr. Bolden reported Watts harassment to Hubbard. *Id.* 209:20-22, *Id.* 210:1. Furthermore, on February 7, 2016, Mr. Bolden reported Watts harassment to Brian Andrews. *Id.* 202:1-22. For such These are opposition activities by Mr. Bolden. For "activity to constitute opposition, the plaintiff must have a reasonable and good faith belief that the conduct [] she opposes constitutes unlawful discrimination under Title VII." Id. at 881 (citing <u>*Clark Cty. Sch. Dist. v. Breeden*</u>, 532 U.S. 268, 271 (2001)). "Opposition almost always arises when an employee communicates to her employer her reasonable belief that the employer has engaged in discrimination." Id. Mr. Bolden clearly communicated his protest and opposition to Ms. Watts' actions to Ms. Smoot, Mr. Hubbard, and Mr. Andrews days before he was fired February 12, 2016.

### 2. The facts show casual connection between Plaintiff' protected activities and his firing.

Causal connection exists between Mr. Bolden's protected opposition activities and the adverse employment action by Defendant against Ms. Iwebo. (*See* <u>*Waag v. Sotera Def. Sols., Inc.*</u>, 857 F.3d 179, 192 (4th Cir. 2017) (recognizing that "for purposes of establishing a prima facie case, close temporal proximity between activity protected by the statute and an adverse employment action may suffice to demonstrate causation"); "*See, e.g.,* <u>*McNairn v. Sullivan*</u>, 929 F.2d 974, 980 (4th Cir. 1991) (plaintiff stated prima facie case even though there was no evidence

of causal connection other than the fact that plaintiff was fired after bringing a lawsuit)." *Karpel v. Inova Health System Services*, 134 F.3d 1222, 1229 (4th Cir. 1998) Furthermore, except where the adverse action occurred at "'the natural decision point.'" weak evidence of temporal proximity, plus evidence of a disproportionate response, is enough to show causation. *See Wilcox v. Lyons*, 970 F.3d 452, 457 (4th Cir. 2020)

In the instant case, only eight days elapsed after February 4. 2016, when Plaintiff's first complaint against Ms. Watts harassing actions and February 12, 2016, when Plaintiff was fired. This clearly shows causal link in time between Mr. Bolden's protected activities and Defendants' adverse action of firing Mr. Bolden on February 12, 2016.

### 3. But for Mr. Bolden's protected activity Defendant would not Have Terminated her Employment.

On February 4, 2016, when Plaintiff first reported Ms. Watts discriminatory harassment, he was performing his duties well beyond the satisfaction and legitimate expectations of Defendants as his employer.  A few weeks before he was fired he was selected, though later revered by Ms. Watts, to be on BGE safety committee. *Id.* 178:15-17 He initiated his complaint of harassment against Ms. Watts on or about February 4, 2016, and was fired eight days later on February 12, 2016. *Id.* 202:1-22.

The evidence of pretext around Defendant's changing non-discriminatory reason offered for Mr. Bolden's firing are material here.  What is left is Plaintiff's protected activities as the but for cause for Defendants' firing Plaintiff. This is further supported by Defendants' failure to fire similar alleged conduct against female collections specialist who physical fought on the job. *Id.* 122:1-3.

> ii. **Defendant's non-discriminatory reason for firing Plaintiff was a pretext to coverup race and gender discrimination**.

Plaintiff incorporates the arguments set forth above showing that Defendants' non-discriminatory reason for firing Plaintiff were pretext for race and gender discrimination, as they are here as pretext to cover up Defendants' retaliatory motives against Mr. Bolden.

## V.    CONCLUSION

WHEREFORE, of the foregoing reasons, Defendant is not entitled to summary judgment any of Plaintiff's Claims, material facts are in dispute and Defendants are not entitled to Judgment as a Matter of Law. Plaintiff is entitled to have the trier of facts decide in his case.

Respectfully,

*/s/ George A. Rose*
George A. Rose, Esq.,
Federal Bar No.: 26086
Rose Law Firm, LLC
9134 Liberty Road, Randallstown, MD.  21202
Telephone #: 410-727-7555
Facsimile #: 443-320-0962
Email: grose@roselawfirm.net
Attorney for *Plaintiff Harry A. Bolden*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of March 2023, a copy of the foregoing Memorandum of Law in Support of Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, was served on counsel of record by the Court's CM/ECF system.

*/s/ George A. Rose*

2